NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0284n.06

No. 12-3523

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 21, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CHOICES IN COMMUNITY LIVING, INC.; MIAMI VALLEY FAIR HOUSING CENTER, INC., | ) ) ) |
| Plaintiffs-Appellants, | ) ) |
| v. | ) ) ) |
| MICHAEL J. PETKUS, JR., doing business as Real Living Petkus Realtors; KATHRYN STOREY, | ) ) ) |
| Defendants-Appellees. | ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE: SILER, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs Choices in Community Living and Miami Valley Fair Housing Center claim that defendants Kathryn Storey and Michael Petkus violated the Fair Housing Act by not showing one of their single-family rental properties to four unrelated cognitively-impaired individuals who proposed to live there in a group-home environment. The district court granted summary judgment in favor of defendants because it found that no reasonable jury could reject their reason for not showing the property as a pretext for intentional disability discrimination—the proposed tenancy was unlawful under the zoning code. We affirm.

I.

No. 12-3523
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

On December 3, 2009, Choices in Community Living ("CICL") employee Celeste Boehm called Real Living, a real estate company solely owned by Michael J. Petkus, Jr., on behalf of four cognitively-impaired individuals to discuss renting a large single-family home that Real Living listed for rent in Dayton. Boehm spoke to Kathryn Storey, an eighteen-year employee of Real Living and licensed realtor. Boehm told Storey that she was looking for a home for "four gentlemen who have disabilities." Storey responded that "we're not set up for disabilities."[1] Boehm clarified that "they're not in wheelchairs, they have some cognitive problems, and they need people to come in and help them get up in time to go to work, and help them cook dinner, and take their medicine." Storey then said she had to check the "by-laws" and requested income information because Real Living required a net monthly income equal to at least three times the amount of rent (the rent for the subject property was $995 per month).

Fifteen minutes later, Boehm called Storey back with the financials for three of the four clients, which showed a combined net monthly income of about $2,100. Boehm said that CICL would guarantee monthly rent payments and requested an immediate showing. Storey said she could not show the property because she was two hours away from leaving for a ten-day vacation. Asked whether someone else could show the house while Storey was on vacation, Storey answered no because she still had to research the by-laws. Boehm requested that Storey call her back as soon as she returned from vacation on December 14 to further discuss the property.

---

[1] Storey denies making this statement.

- 2 -

No. 12-3523
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

Based on these two "very short" calls, Boehm believed Storey was discriminating against her disabled clients. Boehm then contacted Miami Valley Fair Housing Center ("MVFHC") about the situation, and it independently confirmed that Storey was actually on vacation and no one at Real Living was showing the subject property in Storey's absence. MVFHC and CICL also concluded that the "by-laws" Storey referenced—in their view, the homeowners association's by-laws readily available on the internet— did not prohibit CICL's clients from living at the subject property in a group-home environment.

On December 14, having not heard from Storey after she had returned from vacation, Boehm called Storey once more and requested a showing. Storey declined, stating that "I'm still looking for the bylaws" and "I just can't put my hands on it." That night, Storey began researching the City of Dayton Zoning Code to determine if CICL's proposed tenancy was lawful.

The next day, Storey received phone calls from two other prospective tenants for the subject property, Shanda Sulfridge and Anna Nelson. Each represented that they were looking for a home for their non-disabled, single-family households. Storey showed the home to Sulfridge and Nelson on December 16. Unbeknownst to Storey, Sulfridge and Nelson were "test renters" that CICL and MVFHC commissioned to investigate whether Storey was discriminating against CICL's disabled clients.

On December 17, Storey received a voicemail from Boehm requesting an immediate showing. Storey did not return her call because, despite five hours of research, she had not yet concluded whether CICL's prospective tenancy would be lawful under the zoning code. However,

No. 12-3523
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

she preliminarily concluded that the applicable codes prohibited three or more unrelated individuals from living in a home zoned as a single-family residence. To definitively resolve the question, she contacted Dayton's zoning office, leaving messages that night and on December 21. Also on December 21, Storey informed the property owners about the concern with CICL's proposed tenancy, stating "[t]he way I read the law, if you have more than three unrelated persons living in a home, it has to be licensed as a rooming house, which would automatically rule out the lady from the [] community organization."

On December 22, Storey received a hand-delivered letter from MVFHC demanding that she refrain from showing or renting the subject property to anyone until CICL had a chance to view it. The letter accused Storey of disability discrimination, instructed her not to contact Boehm, threatened suit for noncompliance, and requested a written response if her view of the facts differed from MVFHC's. By the time Storey received this letter, she had not yet heard from the Dayton zoning office and decided not to further contact Boehm.

Later that same day, Storey responded to MVFHC's letter with a three-page letter of her own. In it, she outlined all the reasons why she had not yet shown the property to Boehm. Storey explained that all prospective tenants had to be screened before scheduling a showing. Boehm had indicated that four men would be living in the house, but she was able to provide income information for only three of them, and their combined income was insufficient. Storey was also concerned that the four men were unrelated and one proposed tenant was yet to even be identified. She advised that Dayton's zoning code appeared to indicate that the proposed living arrangement would constitute

No. 12-3523
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

a "rooming house," requiring an annual permit and inspections. She stated that the property owners had no desire to convert the single-family residential use of the property, and she was unaware of any statute that required them to do so. Storey noted that she had left two messages with the Dayton zoning office, seeking clarification on the issue. She further acknowledged her fiduciary duty to schedule showings for all qualified applicants, and stated that she would schedule a showing once Boehm provided qualifying income information and it was determined that the intended use was lawful.

On December 23, the Dayton zoning office advised Storey that three or more unrelated people living in the subject property would be unlawful. The office said the only way the proposed tenancy would work was if the owners requested a new occupancy permit to change the single-family residence into a residential facility.

On December 28, Storey relayed to MVFHC what the Dayton zoning office said regarding the proposed tenancy. She indicated that Real Living and the owners were unaware of any statutory requirement that required a homeowner to change the zoning classification of a home and asked MVFHC to provide any information to the contrary. Storey advised she was resuming showings of the property, and she ultimately leased the home to a veteran's family on January 11, 2010.[2]

In January 2011, after obtaining a ruling from the City of Dayton Human Relations Council that there was probable cause to believe that Storey and Petkus had engaged in discriminatory

---

[2] One week after Storey leased the property, she received a letter from the Dayton zoning office indicating that—contrary to its initial assessment—CICL's proposed tenancy was in fact lawful.

- 5 -

*No. 12-3523*
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

housing practices, CICL and MVFHC filed the instant suit, alleging violations of the Fair Housing Act ("FHA") under 42 U.S.C. § 3604(c), (f)(1)-(3).  The district court granted summary judgment to Storey and Petkus, ruling that while "a reasonable jury could find that the circumstances presented here give rise to an inference of unlawful discrimination," that same jury could not conclude that the proffered justification for not showing the property—the proposed tenancy was unlawful under the zoning code—was a pretext for intentional disability discrimination.  CICL and MVFHC timely appealed.

II.

We review a district court's decision on a motion for summary judgment de novo.  *Savage v. Gee*, 665 F.3d 732, 737 (6th Cir. 2012).  "The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law."  *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009).  In evaluating a motion for summary judgment, we view the record in the light most favorable to the nonmoving party.  *Id.*  "A mere scintilla of evidence is insufficient to create a material question of fact and defeat a motion for summary judgment; 'there must be evidence on which the jury could reasonably find for the [non-movant].'"  *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The FHA makes it illegal to discriminate in the rental of a dwelling because of a renter's disability.  42 U.S.C. § 3604(f)(1).  It is also illegal to discriminate against anyone in the terms and

No. 12-3523
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

conditions of a rental because of a renter's disability. *Id.* at § 3604(f)(2). Discrimination includes, inter alia, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* at § 3604(f)(3)(B). The statute further prohibits a person from making a statement with respect to the rental of a dwelling "that indicates any preference, limitation, or discrimination based on [a disability] or an intention to make any such preference, limitation, or discrimination." *Id.* § 3604(c).

We analyze FHA discrimination claims using the *McDonnell Douglas* burden-shifting paradigm. *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The plaintiffs must first "present evidence from which a reasonable jury could conclude that there exists a prima facie case of housing discrimination." *Id.* at 415. If they make this showing, the burden shifts to the defendants to proffer evidence of a legitimate, nondiscriminatory reason for the action taken. *Id*. If the defendants meet their burden, plaintiffs must then present sufficient evidence from which a reasonable jury could find that the proffered reason is pretextual. *Id*. "Employment discrimination case law interpreting the parties' respective burdens under *McDonnell Douglas* is fully applicable" in FHA discrimination cases. *Id.* at 414 n.7.

Courts have recognized three distinct types of FHA discrimination claims: (1) disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations. *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996); *see also Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010); *Reg'l Econ. Cmty. Action*

No. 12-3523
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

*Prog., Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002). In cases where the plaintiffs' discrimination theory does not neatly fall into one of these three categories, we find a prima facie case if "the plaintiffs have presented sufficient evidence to permit a reasonable jury to conclude [they] suffered an adverse housing action under circumstances giving rise to an inference of unlawful discrimination . . . ." *Lindsay*, 578 F.3d at 416 (internal quotation marks and citation omitted).

At the first step of the *McDonnell Douglas* analysis, we find that CICL and MVFHC have successfully presented a prima facie case of housing discrimination under the "catch-all" category described in *Lindsay*. Storey immediately expressed concern to Boehm about disabled renters,[3] Real Living avoided showing the property to Boehm while Storey was on vacation, and Storey delayed responding to Boehm. Further, Storey treated Boehm differently compared to the test renters, determined that the zoning code "rules out" Boehm's proposed tenancy, and articulated several reasons why Boehm never saw the subject property, only one of which is relied on in this appeal. Viewing this evidence in a light most favorable to plaintiffs, and considering the low threshold required to establish a prima facie case, *see Lindsay*, 578 F.3d at 416, the record justifiably permits an inference of unlawful discrimination.

---

[3]Contrary to plaintiffs' position, Storey's alleged statement that "we're not set up for disabilities" is not direct evidence of discrimination. Direct evidence of discrimination is unambiguous evidence that proves the existence of discriminatory animus without requiring any inferences. *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009). Storey's statement is ambiguous on discriminatory intent and requires an inference to find the same because her statement can reasonably be interpreted as an innocent attempt to tell Boehm that the rental home was not equipped to accommodate physically disabled tenants, a truthful and undisputed fact. Therefore, it is not direct evidence of disability discrimination.

No. 12-3523
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

However, defendants rebut this inference by offering a legitimate, nondiscriminatory reason for not showing the house to Boehm and her clients: the proposed tenancy was unlawful under the zoning code. They acknowledge this is the sole justification for not showing the property. Because Petkus and Storey have carried their burden of establishing a nondiscriminatory reason for their actions, "the mandatory presumption of discrimination created by the prima facie test drops from the case." *Lindsay*, 578 F.3d at 421 (internal quotation marks and citation omitted). The burden of production now returns to plaintiffs to identify the evidence in the record from which a reasonable jury could conclude that the proffered justification was a pretext for intentional disability discrimination. Plaintiffs fail to sustain that burden.

CICL and MVFHC offer three reasons why the zoning justification is pretextual, none of which warrant reversal. First, they argue that because Storey did not contemporaneously communicate the zoning justification directly to Boehm during their three phone calls,[4] a jury could find pretext. *See id.* at 421 (explaining that a plaintiff may establish pretext with proof that the proffered reason did not actually motivate the defendant's adverse action). While the lack of contemporaneous statements to support a defendant's rationale can show pretext, *see, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1355–56 (D.C. Cir. 2012) (lack of contemporaneous documentation of the defendant's proffered explanation would support a jury finding of pretext); *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589–92 (6th Cir. 2002) (the lack of contemporaneous

---

[4]The parties fiercely dispute whether Storey told Boehm about the zoning concern during their phone calls: Storey said she did; Boehm said she did not. At this point in the proceedings, we take the facts in the light most favorable to Boehm. *See Dobrowski*, 571 F.3d at 554.

No. 12-3523
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

evidence to support a justification that was not articulated until after the decision to fire could support finding of pretext); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (the defendant's belated reliance on performance issues after adverse action could show pretext), plaintiffs propose a definition of "contemporaneous" that is too narrow.

Here, Boehm made two "very short" phone calls to Storey on December 3 when Storey was less than two hours away from leaving for a ten-day vacation. Boehm immediately called Storey the day Storey arrived back in the office on December 14. That night—one day after Boehm first contacted Storey if vacation time is removed from the calculation—Storey began investigating the zoning code. She left messages with Dayton's zoning office on December 17 and 21. On December 22, tasked with responding to MVFHC's accusatory letter, she described a zoning concern with the proposed tenancy, detailed her research efforts, and advised she left messages with the Dayton zoning office about the issue. Under these circumstances, Storey told CICL and MVFHC about her zoning concern as soon as reasonably possible. Plaintiffs cite no authority which requires Storey to discuss every possible legitimate reason to delay or deny a showing during her opening conversations with Boehm. Facing extended time away from the office within hours, Storey noted what she needed to review initially, then contemporaneously provided the zoning information as she obtained it. Therefore, a reasonable jury could not find the zoning rationale pretextual because Storey initially expressed a by-laws concern over the proposed tenancy, but subsequently determined that zoning was a serious problem after conducting the necessary due diligence.

*No. 12-3523*
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

Next, CICL and MVFHC argue that since Storey has abandoned three justifications for not showing the house, that casts doubt on whether zoning concerns actually motivated Storey. Before plaintiffs filed suit, Storey offered four reasons why she did not show the subject property to Boehm: (1) by-laws issues; (2) lack of income; (3) lack of tenant identification; and (4) zoning problems. Storey communicated these concerns to CICL and MVFHC during her phone calls with Boehm and in her letter to MVFHC. Storey relies only on the zoning rationale in this litigation and has admitted that the other rationales became non-issues after research.

That Storey no longer relies on three of the four original justifications is not grounds for reversal because plaintiffs have failed to genuinely dispute the factual basis of the zoning justification. Storey researched zoning ordinances for five hours, contacted the Dayton zoning office about her concerns on two separate occasions, and received notice that the proposed tenancy was unlawful. CICL and MVFHC simply cannot show that the zoning justification had no basis in fact—the Dayton zoning office advised the proposed tenancy was unlawful and they admit that Storey could rely on that assessment.[5] Moreover, it is undisputed that Storey's duty to her clients included assessment of zoning requirements. Accordingly, there is no evidentiary basis from which a reasonable jury could conclude that the zoning justification was false and the real reason that Storey did not show the property was because she intentionally discriminated against cognitively disabled renters because of their disability. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d

---

[5]Although the Dayton zoning office's initial assessment of the proposed tenancy was later reversed, CICL and MVFHC agree that Storey was permitted to rely on the initial assessment while effective.

*No. 12-3523*
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

1078, 1083 (6th Cir. 1994) (a jury cannot reject a proffered rationale "unless there is a sufficient basis *in the evidence* for doing so"), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Additionally, CICL and MVFHC offer no authority for their proposition that pretext is shown if a defendant articulated multiple contemporaneous justifications for an adverse action, but relies on less than all in subsequent litigation. "When a defendant presents multiple legitimate, nondiscriminatory reasons for the [adverse] action, however, the plaintiff must demonstrate that *each* independently sufficient reason is a pretext for illegal discrimination." *Idemudia v. J.P. Morgan Chase*, 434 F. App'x 495, 505 n.7 (6th Cir. 2011) (emphasis added) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir.1998)). Here, even though subsequently obtained information rendered it unnecessary to rely on the by-laws, income verification, or tenant identification justifications, the remaining zoning justification is not in legitimate dispute.

Finally, CICL and MVFHC argue that since Storey originally had four reasons to deny the showing, and now relies only on one, her reasons are "shifting" and "inconsistent," and that shows pretext. This argument is easily rejected; Storey's zoning justification is the exact same now as it was in December 2009. "Shifting" and "inconsistent" reasons for an adverse action may create an inference of pretext when those reasons change throughout the suit. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 319–20 (6th Cir. 2007) (employer's rationale changed three times during suit); *Cicero*, 280 F.3d at 592 (same). That is simply not the case here.

III.

- 12 -

*No. 12-3523*
*Choices in Cmty. Living, et al. v. Petkus, Jr., et al.*

      For these reasons, we affirm the judgment of the district court.

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: March 21, 2013

Mr. Stephen M. Dane
Relman and Dane
1225 Nineteenth Street, N.W.
Suite 600
Washington, DC 20036

Mr. Robert William Hojnoski
Reminger
525 Vine Street
Suite 1700
Cincinnati, OH 45202

Ms. Carrie Masters Starts
Reminger
525 Vine Street
Suite 1700
Cincinnati, OH 45202

Re: Case No. 12-3523, *Choices in Community Living, I, et al v. Michael Petkus, Jr., et al*
Originating Case No. : 3:11-cv-00019

Dear Counsel,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Michelle M. Davis
Case Manager
Direct Dial No. 513-564-7025

cc: John P. Hehman

Enclosure

Mandate to issue